UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER J. BARTUCCI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 12-cv-2617 |
| MICHAEL J. ASTRUE, Commissioner of | ) | |
| Social Security, | ) | Judge John W. Darrah |
| | ) | |
| Defendant. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff Christopher J. Bartucci suffers from cystic fibrosis and other related maladies and sought disability insurance benefits under 42 U.S.C. § 423.  His claim for disability benefits was initially denied by the Social Security Administration; thereafter, his claim was reconsidered by an Administrative Law Judge ("ALJ"), who conducted a hearing and subsequently denied Bartucci's claim for disability benefits.  The Social Security Administration Appeal's Council denied Bartucci's request to review his claim. Bartucci seeks judicial review of the decision and filed a motion for summary judgment, requesting the Commissioner's decision be reversed and remanded.  The Commissioner also filed a motion for summary judgment, seeking to have the Commissioner's decision affirmed.  For the reasons set forth below, Bartucci's motion is denied; the Commissioner's motion is granted; and the Commissioner's final decision is affirmed.

**BACKGROUND**

Bartucci filed a Title II application for disability insurance benefits and a period of disability on August 28, 2008.  (Admin. Record at 15.)  Bartucci claimed the onset of his disability was on June 2, 2006.  (*Id.*)  Bartucci's disability claim was initially denied

on December 30, 2008, and denied again upon reconsideration on May 11, 2009. (*Id.*)

Bartucci requested a hearing, and an administrative hearing was conducted on May 25,

2010, before ALJ Marlene R. Abrams. (*Id.*) After consideration of all evidence

presented, the ALJ determined Bartucci was not under a disability within the meaning of

42 U.S.C. § 423 from June 2, 2006, through August 24, 2010, the date of the ALJ's

decision. (*Id.*) The Social Security Administration's Appeals Council denied further

review of Bartucci's claim. Thus, the ALJ's decision is the final decision of the

Commissioner and is therefore ripe for review. *See* 20 C.F.R. § 404.981; *Eads v.*

*Secretary of Dept. of Health and Human Services*, 983 F.2d 815, 816 (7th Cir. 1993).

*Medical Facts*

Bartucci was born on July 9, 1967, and diagnosed with cystic fibrosis at age one.

(Admin. Record at 312.) Bartucci also suffers from chronic pancreatic insufficiency,

radiological abnormalities with thickening of the colon wall, and diabetes mellitus.

(Admin. Record at 17.) He was terminated from his last job on June 2, 2006, due to

excessive absences. (*Id.* at 39.) Prior to this termination, Bartucci held a number of

different positions, including positions as an automobile salesman, a truck driver, an

armored vehicle driver, and a dock worker. (*Id.* at 88-89.)

Bartucci was admitted to the hospital in November 2007, complaining of lower

abdominal pain. (*Id.* at 263.) Bartucci stated the pain was "on and off" for the previous

six months; thereafter, he was diagnosed with acute appendicitis and had his appendix

removed. (*Id.* at 263, 265.) Bartucci was examined by a physician in December 2008,

and the doctor then noted that Bartucci reported he was able to walk for only about ten

2

minutes, did not use a cane, lift weights up to ten to twenty pounds, and had no problem
with sitting. (*Id.* at 313.) Bartucci further indicated in that examination that he was able
to clean his own house, drive, and do his own shopping. (*Id.*) Bartucci reported to the
physician in December 2008 that he had "recurrent diarrhea and foul smelling stool
usually about two days of the week with 5 bowel motions with each episode." (*Id.* at
312.)

In another medical evaluation in December 2008, Dr. Richard Bilinsky assessed
Bartucci's functional capacity and determined Bartucci's impairments did not result in
any limits on his physical exertion, posture, manipulation, vision, or communication
abilities. (*Id.* at 294-301.) Because of Bartucci's cystic fibrosis and related difficulty
breathing, Dr. Bilinsky indicated that Bartucci should avoid concentrated exposure to
extreme heat, cold, and humidity; he further noted Bartucci should avoid even moderate
exposure to fumes, odors, dusts, gases, or poor ventilation. (*Id.* at 298.) Dr. Bilinksy
reported that Bartucci did not agree to undergo additional testing and refused nebulizer
treatment for his cystic fibrosis. (*Id.* at 301.) Dr. Bilinsky's report of Bartucci's
condition was affirmed by Dr. Ernst Bone, a state agency consulting physician, in May,
2009. (*Id.* at 319-20.)

Bartucci returned to the emergency room in September 2009, complaining of
intermittent abdominal pain for the previous month and more severe pain immediately
prior to the hospital visit. (*Id.* at 322.) Bartucci denied having diarrhea or constipation at
that time. (*Id.*) He rated his pain an eight out of ten in severity and stated that the pain
was intermittent, sometimes lasting for hours at a time. (*Id.* at 324.) Bartucci was to be

admitted for further gastroenterology evaluation but refused to be admitted to the hospital, against the medical advice of the treating physician.[1]  (*Id.* at 321.)

*Administrative Hearing and Decision*

A hearing was conducted on May 25, 2010, before ALJ Abrams in Orland Park, Illinois.  Three individuals testified at the hearing:  the plaintiff, Christopher Bartucci; Dr. Ashok G. Jilhewar, an impartial medical expert; and Michelle M. Peters, an impartial vocational expert.

Bartucci testified regarding his abdominal pain and his general fatigue.  (Admin. Record 49-63.)  Bartucci also spoke about his day-to-day activities, including his ability to perform his own personal grooming and to occasionally prepare meals.  (*Id.* at 49.)

Dr. Jilhewar also provided testimony and opined that Bartucci's condition, including his cystic fibrosis, did not meet or equal the Commissioner's Listing of Impairments at 20 CFR § 404.1525, Subpt. P, Appx. 1, § 3.04, which describes the conditions necessary for a cystic fibrosis impairment to prevent an individual from doing any gainful activity.  Dr. Jilhewar further testified that Bartucci's condition failed to meet the criteria for the Section 9.08 listing for diabetes mellitus.  (Admin. Record at 18.)

The vocational expert testified regarding Bartucci's ability to perform various jobs and indicated that based on Bartucci's condition, he would be unable to perform his

---

[1] Bartucci submits in his motion that in 2011, he began treatment at the Rush University Medical Center in the hospital's Adult Cystic Fibrosis Clinic, receiving treatment for abdominal pain.  However, this treatment commenced well after the ALJ issued the final decision on Bartucci's claim, and, therefore, any information relating to this treatment is beyond the scope of the substantial evidence considered by the ALJ in forming the final decision.  Thus, Bartucci's more recent treatment is not considered in this review.

past occupations, including his positions as automobile salesman and truck driver. (*Id.* at 90.) The vocational expert testified that Bartucci *would* be able to perform the occupations of a cashier, an information clerk, and an inspector. (*Id.* at 92-93.) However, she indicated that if a person in one of those positions was unable to work at least 85 percent of the workday, the individual would likely be unable to maintain such a position. (*Id.* at 93-94.)

Following the administrative hearing, on August 24, 2010, the ALJ issued a decision, determining Bartucci was not under a disability within the meaning of the Social Security Act from June 2, 2006 through the date of the decision. The ALJ followed the requisite five-step analysis (as further discussed below) to come to that conclusion. First, the ALJ determined that Bartucci had not engaged in substantial gainful activity since June 2, 2006, the alleged onset date. (*Id.* at 17.) At step two, the ALJ determined that Bartucci had severe impairments under the Social Security Act, including cystic fibrosis, chronic pancreatic insufficiency, radiological abnormalities, and diabetes mellitus. (*Id.*) In step three of the analysis, the ALJ concluded Bartucci did not have an impairment or combination of impairments meeting (or medically equaling) one of the listed impairments in 20 CFR § 404.1525, Subpt. P, Appx. 1. Thereafter, the ALJ considered Bartucci's residual functional capacity, pursuant to 20 CFR § 404.1520(e), and determined Bartucci had the capacity to perform light work, provided he avoid moderate exposure to temperatures extremes, including heat, cold, humidity, fumes, odors, and poor ventilation. (*Id.* at 17-18.) At step four, the ALJ determined that Bartucci did not possess the capacity to perform his previous relevant work. (*Id.* at 23.)

5

Finally, in step five of the analysis, the ALJ concluded Bartucci was able to perform jobs that exist in significant numbers in the national economy. (*Id.* at 24.) Accordingly, the ALJ determined Bartucci was not disabled under the Social Security Act.

## LEGAL STANDARD

### *Standard of Review*

Where the Appeals Council declines a claimant's review, the ruling of the ALJ is the final decision of the Commissioner. *O'Connor–Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010). When the decision of an ALJ constitutes the final action of the Social Security Administration, "the reviewing district court examines the ALJ's decision to determine whether substantial evidence supports it and whether the ALJ applied the proper legal criteria." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) (*Allord*). Substantial evidence contemplates evidence a reasonable person would find sufficient to support the ALJ's decision. *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012) (*Kastner*) (citing *Prochaska v. Barnhart*, 454 F.3d 731, 734–35 (7th Cir. 2006)). "The ALJ is not required to address every piece of evidence or testimony presented, but must provide 'an accurate and logical bridge' between the evidence and her conclusion that a claimant is not disabled." *Kastner*, 697 F.3d at 646 (quoting *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)).

### *Disability Standard*

An individual is considered disabled for purposes of the Social Security Act if there is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To make the determination as to whether an individual is disabled, there is a five-step, sequential analysis. 20 C.F.R. § 404.1520. The inquiry includes: "(1) whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling; (4) if the claimant does not have a conclusively disabling impairment, whether he can perform his past relevant work; and (5) whether the claimant is capable of performing any work in the national economy." *Kastner*, 697 F.3d at 646 (citing 20 C.F.R. § 404.1520). If, in step three, the individual's impairment meets or equals a listed impairment in 20 C.F.R. § 404, Subpart P, Appendix 1, the claimant qualifies for disability benefits, and no additional inquiry is necessary. *Id.* at 646-47. The claimant bears the burden of proof through the first four steps of the analysis; at step five, the Commissioner must establish the claimant "possesses the residual functional capacity to perform work that exists in a significant quantity in the national economy." *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011) (*Weatherbee*) (defining "residual functional capacity" as the most a claimant can still do despite his limitations).

## ANALYSIS

### *Digestive System Analysis*

Bartucci's primary argument on appeal is that the ALJ failed to properly analyze his cystic fibrosis in conjunction with potential impairments to his digestive system. Specifically, Bartucci contends the ALJ failed to evaluate the combined effects of his cystic fibrosis on his pulmonary and digestive systems. (Pl.'s Mem. at 7.)

The Commissioner's Listing of Impairment for cystic fibrosis provides one of three necessary criteria be met for the condition to be a disabling impairment: (A) a forced expiratory volume ("FEV")[2] equal to or less than the value listed in the table provided, corresponding to claimant's height; (B) episodes of bronchitis, pneumonia, hemoptysis or respiratory failure which required physician intervention, occurring at least once every two months or at least six times a year; or (C) persistent pulmonary infection accompanied by superimposed, recurrent, symptomatic episodes of increased bacterial infection occurring at least once every six months and requiring intravenous or nebulization antimicrobial therapy. 20 C.F.R. § 404, Subpart P, Appendix 1, § 3.04. Bartucci bore the burden of proving his cystic fibrosis was accompanied by one of those three conditions. The ALJ carefully considered each of the three criteria and, in conjunction with the testimony of the independent medical expert, Dr. Jilhewar, determined Bartucci did not fulfill any of the three criteria. (Admin. Record at 18.) Part A of the criteria would require Bartucci to score an FEV of 1.85 or less, but Bartucci's

---

[2] Forced Expiratory Volume is the amount of air that can be forcibly exhaled from the lungs in the first second of exhalation. *Mosby's Medical, Nursing, & Allied Health Dictionary* 652 (6th ed. 2002).

FEV was 2.18.  (*Id.*)  Part B of the criteria requires Bartucci to demonstrate regular

episodes of bronchitis, pneumonia, or respiratory failure; Bartucci indicated during his

medical consultation that he had only one episode of pneumonia, which had occurred

twenty years prior.  (*Id.*)  Finally, Part C of the criteria requires Bartucci to have

persistent pulmonary infection; no evidence of this was presented in the record.

Therefore, the ALJ appropriately considered the Commissioner's Listing for cystic

fibrosis and concluded, after evaluating the evidence presented, that Bartucci failed to

meet any of the requisite conditions accompanying cystic fibrosis to qualify as disabled.

Beyond this analysis, Bartucci argues, the ALJ was obligated to consider the

impact of cystic fibrosis on his digestive system, as well.  The Commissioner's Listing

for Respiratory System Impairments states that "[b]ecause cystic fibrosis may involve the

respiratory and digestive body systems, the combined effects of the involvement of these

body systems must be considered in case adjudication."  20 C.F.R. § 404, Subpart P,

Appendix 1, § 3.00(D).  In the ALJ's decision, the ALJ determined Bartucci did not meet

or equal the listed impairment for cystic fibrosis, as discussed above. The ALJ's analysis

of Bartucci's impairment does not specifically address the impact of Bartucci's cystic

fibrosis in conjunction with both his respiratory and *digestive* systems.  (*See* Admin.

Record at 17-18.)  However, Section 3.00 of the Commissioner's Listing requires that

"[r]espiratory disorders along with any associated impairment(s) must be established by

medical evidence.  Evidence must be provided in sufficient detail to permit an

independent reviewer to evaluate the severity of the impairment."  20 C.F.R. § 404,

Subpart P, Appendix 1, § 3.00(A).  Section 3.00 further provides that "nonpulmonary

aspects of cystic fibrosis should be evaluated under the digestive body system [listing]."
20 C.F.R. § 404, Subpart P, Appendix 1, § 3.00(D). The burden is on the claimant to
submit medical evidence establishing his impairments. *Allord*, 631 F.3d at 416.

The Commission provides in the listing for Digestive System disorders that
evidence to support a digestive system impairment includes: ". . . clinical and laboratory
findings. The documentation [of a digestive system disorder] should include appropriate
medically acceptable imaging studies and reports of endoscopy, operations, and
pathology, as appropriate to each listing, to document the severity and duration of your
digestive disorder." 20 C.F.R. § 404, Subpart P, Appendix 1, § 5.00(B). Bartucci does
not identify, in his motion, medical evidence submitted before the ALJ that would
demonstrate he had met his burden in support of a finding of a digestive system
impairment in conjunction with his cystic fibrosis. Bartucci did testify regarding his
abdominal pain, and his medical history indicates reports of abdominal pain, particularly
with regards to his appendicitis. (Admin. Record at 263, 265.) Bartucci further testified
regarding his recurrent diarrhea and reported the problem to a physician in December
2008. (*Id.* at 312.) Bartucci visited the emergency room in September of 2009,
complaining of severe abdominal pain; however, he left the emergency room soon
thereafter, refusing to be admitted to the hospital and further refusing to undergo
gastroenterological testing. (*Id.* at 321.) Therefore, Bartucci did not present any
documentation (as required by the Commission) to the ALJ to adequately support a claim
of a digestive system impairment relating to his cystic fibrosis. While Bartucci argues
that the ALJ failed to "explore the effects the cystic fibrosis had on Mr. Bartucci's lungs

in combination with the effects that the disease had on his digestive system," the ALJ could only consider the evidence presented to her to make a determination. Bartucci failed to submit evidence to support the deleterious effects of cystic fibrosis on his digestive system, other than Bartucci's own claims of abdominal pain and intermittent diarrhea.

Bartucci further maintains the ALJ erred by not considering the supplemental medical treatises submitted by Bartucci after the hearing, which identifies abdominal pain as a symptom of cystic fibrosis. (Admin. Record at 161-68.) Even assuming this to be a fact in evidence, it would not necessarily change the outcome of the ALJ's decision, and abdominal pain does not clearly establish the existence of a digestive system disorder or otherwise clearly establish the existence of a disability. Moreover, the ALJ is "not required to address every piece of evidence or testimony presented." *Kastner*, 697 F.3d at 646. Consequently, the ALJ's decision regarding Bartucci's impairments was supported by substantial evidence, and she reasonably concluded Bartucci was not disabled for purposes of the Social Security Act.

*Credibility Assessment*

Bartucci next opposes the ALJ's credibility determination of Bartucci, arguing the ALJ erred when she determined "the claimant's testimony, reports, and allegations . . . [were] not . . . credible to the extent alleged." (Admin. Record at 22.) In particular, Bartucci takes issue with the ALJ's assessment of his ability to sustain full-time work, on the basis that he could perform daily living activities. (Pl.'s Mem. at 14.) A credibility determination by an ALJ is given special deference "because the ALJ has the opportunity

11

to observe the claimant testifying." *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010). A credibility determination is reversed only if it is found to be "patently wrong." *Id.*

Here, the ALJ acknowledged Bartucci's testimony and allegations regarding his pain and fatigue but, after an objective review of the medical evidence, did not find his pain and fatigue to be disabling. (Admin. Record at 22.) The ALJ further noted that Bartucci's own actions "undercut the allegations of disabling pain," specifically observing that Bartucci refused to be admitted to the hospital and undergo a gastroenterological exam, did not take pain medication, and failed to be compliant with his insulin regimen to treat his diabetes. (*Id.*) All of this information, coupled with Bartucci's reported daily living activities, did not comport with the alleged severity of his impairments. The ALJ's assessment of Bartucci's credibility is entitled to deference, and while Bartucci takes issue with the ALJ's credibility determination, he identifies nothing that is "patently wrong" with the assessment. *See Shideler v. Astrue*, 688 F.3d 306, 310-311 (7th Cir. 2012).

Bartucci also argues the ALJ failed to follow Social Security Ruling 96-8p, which explains how an ALJ assesses a claimant's residual functional capacity, or "RFC." *See Weatherbee*, 649 F.3d at 569 (defining "residual functional capacity" as the most a claimant can still do despite his limitations). "Although the 'RFC assessment is a function-by-function assessment,' the expression of a claimant's RFC need not be articulated function-by-function; a narrative discussion of a claimant's symptoms and medical source opinions is sufficient." *Knox v. Astrue*, 327 F. App'x 652, 657 (7th Cir. 2009) (citing SSR 96-8p). In the ALJ's decision in the instant case, appropriate analysis was performed regarding

Bartucci's daily living activities and his ability to perform basic activities, in conjunction with the medical evidence introduced. Moreover, the ALJ need not discuss each piece of evidence considered in the decision. *Kastner*, 697 F.3d at 646. Thus, the ALJ did not err in her credibility determination of Bartucci. Considering the entire record, the ALJ's decision, denying Bartucci's claim for disability benefits, is appropriately supported by substantial evidence.

## CONCLUSION

In light of the foregoing analysis, Bartucci's Motion for Summary Judgment is denied. The Commissioner's Motion for Summary Judgment is granted, and the Commissioner's final decision is affirmed.


Date: <u>December 13, 2012</u>

JOHN W. DARRAH
United States District Court Judge

13